ADAM D. STEWART, PLAINTIFF IN ERROR, v. THE UNITED STATES.

Congress have directed by law that in certain cases the duties of collectors of the revenue should be united with those of naval officer or surveyor of the port, but never with those of inspector of the customs.

Therefore, where a person held the two offices of collector of the revenue and inspector of the customs, and charged a salary for each office separately, it was irregular.

In May, 1822, congress passed an act, (3 Stat. at Large, 693,) directing that " no collector, surveyor, or naval officer, shall ever receive more than $400 annually, exclusive of his compensation as collector, surveyor, or naval officer, and the fines and forfeitures allowed by law for any services he may perform for the United States in any other office or capacity."

This act was intended to provide compensation to the collector, &c., for extraordinary services incident to their respective offices, and to them only; but did not include the union of the two offices of collector and inspector of the customs. A different mode and rate of compensation for inspectors was provided by law.

THIS case was brought up, by writ of error, from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington.

There was an agreed statement of facts in the record, which is transcribed in the opinion of the court, and therefore it is unnecessary to recite it here.

Stewart was sued in 1835, and voluntarily appeared. From

Stewart v. The United States.

that time to 1850, the cause was regularly continued upon the docket. Under the instructions of the court, the jury found a verdict for the plaintiffs, for $638.81, with interest from the 13th of January, 1833.

Stewart brought the case up to this court by writ of error.

It was argued by *Mr. Walter S. Cox*, for the plaintiff in error, and by *Mr. Cushing*, (attorney-general,) for the United States.

*Mr. Cox*, for the plaintiff in error, made the following points : —

1. That the act of congress of May 7, 1822, does not apply to cases in which a collector holds at the same time the office of collector and any other distinct and independent office recognized by law, by distinct and independent appointment, but only to cases in which duties appertaining to other offices are, in occasional cases, annexed by law to the office of collector, or, by usage of the treasury department, he is called on to perform duties not strictly appertaining to his office.

If the literal meaning of a statute would extend to cases which the court are satisfied the legislature never contemplated, or which would lead to absurd consequences, the operation of the statute must be restrained to narrower limits than the words import. 2 Inst. 386; Bacon's Abridg't Stat. I. 5; 1 Blackst. 88; Brewer's Lessee v. Blougher, 14 Pet. 78; United States v. Fisher, 2 Cr. 358; 1 Cond. R. 421.

In this case, the literal import of the language used in section 18th of the act of May, 1822, as understood by the accounting officers of the treasury, would embrace cases never contemplated by congress, and to which the application of the law would be absurd. It would require that every officer in the service of the United States should be satisfied with $400 per annum, as the pay of his office, if he at the same time hold the office of collector, no matter how insignificant the emoluments of the latter, or how responsible the duties of the former office.

On the other hand, there is a subject-matter to which the language applies without any absurd or inconvenient consequences. The act entitled " An act to regulate the collection of duties," &c., of July 31, 1789, ch. 23, §§ 7, 8, (1 Stat. at Large, 29,) devolves the duties of one or more of the three offices of collector, naval officer, and surveyor, upon one of them, in certain contingencies, and temporarily.

Again, by the practice of the treasury department, collectors and naval officers have acted as agents to disburse money for light-houses, receiving commissions for the same, and have

issued certificates to accompany distilled spirits, wines, and teas, receiving fees for the same. In these cases, they do not act in any distinct office created by law, but perform mere agency service, these duties being annexed to their offices by the department. The law applies to such cases, and was so construed by the department. See Dr. Mayo's work on the Treasury Department, 69, 75.

The construction given by the United States to this law would have the effect of making a few words at the end of the law, exclusively intended for revenue officers, operate as a repeal, by implication, of all the laws fixing the compensation of officers of the United States, in cases where any other office is united in the same person with the office of collector, &c. Repeals by implication, whether general or partial, are not favored by the law; and there must be positive repugnancy between the old and the new law to make a repeal by implication. Dwarris on Statutes, 674; Wood *v*. United States, 16 Pet. 342.

In this case, the construction maintained by the plaintiff in error would reconcile the act of May 7, 1822, with the others, in all cases.

If fairly interpreted, the letter of the law in this case seems more appropriate for the class of cases to which we would limit it, than to convey the extended meaning claimed for it on the part of the United States. Had it been meant to apply to distinct offices, the language would have been as in the 14th section of the act: "No person who shall be a collector, &c., and shall at the same time hold any other office, &c., shall ever receive more than $400 annually, &c., in his said office." Instead of which, the language is, "no collector," &c., that is, *qua* collector, &c., "shall ever receive, &c., for any services which he," that is, as collector, may perform, &c. If a collector has at the same time another distinct office, as that of inspector, it is not the collector who performs services in the latter office, but the inspector; it is not the collector who receives pay for these services, but the inspector. The prohibition, therefore, as to a collector's receipts, would seem not to apply, except to cases where the collector, as such, receives fees for incidental services performed by him as collector, but which do not strictly belong to his office.

This view is confirmed by the fact that, wherever the laws are clearly meant to apply to the case of union of distinct offices in the same person, the language used is entirely different.

There are two sets of phrases in the laws. The 15th section of the act of May 7, 1822, which limits the amount to be

received by a deputy collector "for any services he may perform for the United States in any office or capacity," is supposed to indicate the same policy as the 18th section, and to apply only to services rendered by him as deputy collector, and not to cases where he is invested at the same time with another distinct office.

On the other hand, the 14th section employs a different language, to apply to distinct offices. So the civil and diplomatic appropriation act, of June 27, 1834, § 2, in speaking of other officers than collectors, naval officers, and surveyors, says, " nor shall the union of any two or more of these offices in the same person entitle him to more than," &c.; which is different from saying, " nor shall any such officer receive more than, &c., for any services he may render to the United States, in any other office or capacity." The language of the act of 1834 is followed in the other appropriation acts.

The difference between the two forms of language is shown, and the above views generally are sustained, in the case of United States v. Morse, 3 Story's R. 87. It may be added, that the meaning of this act is at least doubtful; and if so, it should be construed favorably to the plaintiff in error. *Ib.*

2. If our construction of the act of May 7, 1822, be correct, the plaintiff in error was entitled to the compensation claimed by him in his accounts for the 4th quarter of the year 1832.

By the act of March 2, 1799, ch. 22, § 21, (1 Stat. at Large, 627,) collectors are to appoint inspectors, with the approbation of the principal officer of the treasury department.

By the act of March 3, 1815, ch. 94, § 3, (3 Stat. at Large, 231,) continued in force by acts of April 27, 1816, and March 3, 1817, inspectors are declared to be officers of the customs, and required to take an oath of office.

The act to regulate the collection of duties, &c., of July 31, 1789, (1 Laws U. S. 45,), limits the compensation of inspectors to one dollar and twenty-five cents for every day of actual employment.

The act of March 2, 1799, § 2, (1 Stat. at Large, 707,) increases the maximum to two dollars per day; and the act of April 26, 1816, (3 Stat. at Large, 306,) adds fifty per centum to this maximum, making it three dollars per day.

Under these acts, the secretary of the treasury, in 1820, established the compensation of the plaintiff in error at three dollars per day. He continued in the office until January 15, 1833. Under the fixation of his salary by the proper officer, after the service was rendered, he acquired a vested right to the compensation established by the secretary, unless the act of May 7, 1822, § 18, reduced his compensation; and that, too, even if

the secretary erred, either in the appointment to office or the fixation of salary.     United States v. McCall, Gilpin, 563; United States v. McDaniel, 7 Pet. 15.

3. No act of the secretary of the treasury, or of the plaintiff in error himself, affected his right to the compensation claimed.

The allowance made by the secretary of the treasury, at the end of the year 1824, was a decision upon the construction of the law.  It could not be otherwise; for, if the plaintiff in error had acquired a vested right to the three dollars per day, it could not be taken away from him by the secretary, and the secretary is not to be presumed to have intended to exceed his powers. The act of the secretary related entirely to the past, and must therefore be construed to be a mere decision, which, if erroneous, cannot conclude the judgment of a court.     United States v. Dickson, 15 Pet. 141.

Nor does the omission of the plaintiff in error to charge more than $400 per annum, from the year 1824, preclude him from afterwards claiming the difference between that and the maximum compensation.  If the law entitled him to it, nothing but a new contract or a release could deprive him of it, of which there is no evidence, and for which there would be no consideration.   His omission to charge, construed as an admission of law, would not affect him.   Construed as an admission of fact, it could not be treated as an estoppel or admission in law which would authorize a court, from the mere fact of omission to charge, to draw the legal conclusion that he is not entitled to charge now; but would, at most, be mere evidence for a jury, explainable on other grounds than intention to admit any thing, such as constraint, or misapprehension of fact, &c.   In point of fact, the whole conduct of the plaintiff in error would seem easily explainable.   Situated at a point remote from Washington, he finds his allowance of three dollars per day, as inspector, struck out of his accounts, without, as far as appears, any explanation.   Supposing that the secretary, in the exercise of his legal discretion, has revoked his last fixation of the pay of the office of inspector, he falls back upon the original allowance of $40 per month, and charges that in his next accounts.   This also is struck out without explanation.   He is then left in the dark, and charges nothing for his services as inspector, for four quarters, but evidently meaning to claim what was due him in that capacity at some more convenient season.   If this is to operate against him at all, it would bind him to render the services for nothing.   At the end of the year 1824, he finds in the corrected account sent him from the department, a credit of $1,000, for two years and a half of service, at the rate of $400 per annum, without further explanation.   He may have sup-

posed from this that, as far back as May, 1822, the secretary had established a new rate of compensation. Though the law of May 7, 1822, was sent to him, he may not have observed the provisions supposed to affect him, or have understood it as the accounting officers did; or, if he did so understand it, he may have intended to reserve all questions until the final settlement of his accounts, knowing that a persistence in making charges already disallowed would exhibit a balance against him in his accounts, and subject him to dismissal from office.

At all events, the questions what the plaintiff in error meant, and what the secretary of the treasury meant to do, are questions for a jury. The refusal of his prayer, by the court below, precluded him from asking further instructions, and took his case from the jury. If, however, his construction of the law of May 7, 1822, be correct, he is entitled, if any questions of fact remain open, to have the case remanded to the court below for a new trial.

4. If the construction of the plaintiff in error, of the act of May 7, 1822, be correct, then, even were he concluded by any fact in the case from claiming the whole amount demanded by him, he would, at least, be entitled to the compensation claimed by him to the end of the year 1824, and the decision of the court below must be reversed, for this would entitle him to a credit of $1,737$\frac{50}{100}$, which exceeds the balance claimed by the United States, and the judgment would have to be for the defendant.

*Mr. Cushing*, for the United States.

The statement of facts in the bill of exceptions by Stewart, is, that said Stewart was commissioned by the President, in March, 1818, collector for the district of Michilimackinac, and inspector of the revenue for the port thereof; which office he held, by successive commissions, until 15th January, 1833.

On 1st April, 1819, said Stewart was appointed by the secretary of the treasury, inspector of the customs for that port, which latter office he also continued to hold under this appointment, until the 15th January, 1833, and was allowed the per diem compensation, as inspector of the customs, up to 1st July, 1822, at the maximum of three dollars per day.

This "is the only case found of record of a collector holding, at the same time, the two offices of collector and of inspector of the customs."

The act of 7th May, 1822, (3 Stat. at Large, by L. and B., 696, ch. 107, § 18,) which took effect 1st July, 1822, enacts: "No collector, surveyor, or naval officer, shall ever receive more than $400 annually, exclusive of his compensation as collector, surveyor, or naval officer, and the fines and forfeitures allowed

by law for any services he may perform for the United States in any other office or capacity."

The said Stewart has been allowed, in the adjustment of his accounts, the said sum of $400 annually, since the 30th June, 1822, over and above his compensation as collector, and the fines and forfeitures allowed by law. But, notwithstanding the said act of 1822, Mr. Stewart claimed to be allowed the further compensation, at the rate of three dollars per day from the 1st July, 1822, during his continuance in office, until the 14th January, 1833, which the accounting officers of the treasury have uniformly rejected, as often as presented, since the said 1st July, 1822.

This rejected claim of three dollars per day as inspector of the customs, while he was also collector of the district, is the subject of the bill of exceptions, (pp. 8, 9,) and of this writ of error, by Mr. Stewart.

That the offices of collector of a district and of inspector of the customs are distinct and separate, is admitted; but that does not make an exception from the inhibition of the act of 1822, " that no collector * * * shall ever receive more than $400 annually, exclusive, &c., * * for any services he may perform for the United States in any other office or capacity."

The 21st section of the act of the 2d March, 1799, to regulate the collection of duties on imports and tonnage, (1 Stat. at Large, by L. and B., 642, chap. 22,) shows that the several offices of collector, naval officer, surveyor, and inspector, are distinct. Their several and respective duties are defined; and the same section requires, " at the ports to which a collector only is assigned, such collector shall solely execute all the duties in which the coöperation of the naval officer is requisite as aforesaid; and shall also, as far as may be, perform all the duties prescribed to the surveyors at ports where such officers are established."

The act of 1822 will not permit the collector, who executes solely the additional duties of naval officer and surveyor, to receive more than $400 per year for the services which he so performs in the capacity of naval officer and surveyor, exclusive of his compensation as collector and the fines and forfeitures, although the several offices are distinct.

There is no reason why the collector, who performs also the business of inspector of the customs at the port, should receive the compensation of three dollars per day as inspector, seeing that it is the collector who employs the inspector; that is, the same officer acting in one capacity employs himself in another; for, by the 21st section of the act of 1799, before cited, it is enacted that the collector shall, with the approbation of the prin-

cipal officer of the treasury department, employ proper persons as weighers, gaugers, measurers, and inspectors, at the several ports in his district.

It is true, the appointment, as a constitutional act, lies with the secretary of the treasury, the language of the statute being quite inexact, and running as if the secretary merely possessed a power of approving or disapproving. In fact, he, and he alone, appoints. Murbury v. Madison, 1 Cranch, 137, 155; United States v. Batchelder, 2 Gall. 15; United States v. Wood, 2 Gall. 361; Mr. Legaré's Opinion, Opinions Att-Gen. 1577, 1579.

But the inconvenience remains, of having the collector, as collector, employ himself as inspector. The collector himself is to pay to the inspector the sum allowed by law, "for every day he shall be actually employed in aid of the customs, a sum not exceeding two dollars; and for every other person that the collector may find it necessary and expedient to employ, as occasional inspector, or in any other way in aid of the revenue, a like sum while actually so employed, not exceeding two dollars for every day so employed; to be paid by the collector, out of the revenue, and charged to the United States." Act to establish the compensations of officers employed in the collection of imports and tonnage, 1 Stat. at Large, by L. and B., 707, ch. 23, § 2.

The compensation to inspectors was increased by a subsequent act, so that the maximum of allowance is three dollars per day.

By the act to regulate the collection of duties on imports and tonnage, approved March 2, 1799, (1 Stat. at Large, by L. and B., 642, ch. 22, § 21,) "The surveyor shall superintend and direct all inspectors, weighers, measurers, and gaugers within his port; and shall, once every week, report to the collector the name or names of such inspectors, weighers, gaugers, or measurers, as may be absent from, or neglect to do, their duty. * * And at the ports to which a collector only is assigned, such collector shall solely execute all the duties in which the coöperation of the naval officer is required, as aforesaid, and shall also, as far as may be, perform all the duties prescribed to the surveyors, at the ports where such officers are established."

The mode of appointing the inspector, the mode of checking his absence or neglect, and the mode of payment, render this office improper to be held by the same person who is, at the same time, collector of the port. The two offices are incompatible; and not to be held by one and the same person, at one and the same time.

This may account for the facts, that "the defendant's (now plaintiff in error) is the only case found on record, of a collector

holding, at the same time, the office of inspector of the cus--
toms;" and that he was so appointed but once, on the 15th
April, 1819, but was never afterwards reappointed as inspector
of customs, although his appointment and commission as col-
lector were renewed every four years, from the 12th March, 1818,
until January, 1833.

The act of 1799 (1 Stat. at Large, 638, § 17) enacted that
the district of Michilimackinac should consist of a port of entry
(and, of course, of delivery also) for the district, and of three
other ports of delivery only; a collector to be appointed to reside
at the port of entry, and surveyors to reside at the ports of de-
livery. So that the collector of the district had to perform the
duties also assigned by law to a naval officer and surveyor, at
ports where such officers were established.

The appointment of Mr. Stewart to be inspector of the cus-
toms, while he was collector of the district, was an unauthorized
act, a mistake.

If the collector could lawfully nominate himself to be in-
spector also, and the head of the department could lawfully
approve and confirm, then the collector of the port could be,
also, inspector, weigher, gauger, measurer, and marker, and,
according to the instruction moved, (pp. 8, 9,) might receive
his compensation as collector, three dollars per day as inspector,
and, also, the fees of weigher, gauger, measurer, and marker.

But the act of 1822 prohibits a collector from receiving more
than $400 annually, exclusive of his compensation as collector,
and the fines and forfeitures allowed by law, " for any services
he may perform for the United States in any other office or
capacity."

The adjustment by the accounting officers of the treasury, in
refusing to allow the collector more than $400 annually, for any
extra services, and in refusing to allow him three dollars per day
as an inspector, or at the rate of forty dollars per month as in-
spector, was correct; and the instruction moved on the part of
the defendant, on the trial in the circuit court, was very properly
refused by the court; wherefore, it is alleged, on the part of the
United States, that there is no error apparent in the record, to
the prejudice of plaintiff in error, and the attorney-general prays
that the judgment be affirmed, with damages and costs.

Mr. Justice DANIEL delivered the opinion of the court.

This case comes before us upon a writ of error to a judgment
of the circuit court of the United States for Washington county,
in the District of Columbia, in favor of the defendants in error,
against the plaintiff, as collector of the revenue for the district
of Michilimackinac. The jury, upon the trial in the circuit

court, rendered a verdict for the defendants in error, for the sum of $638.81, with interest thereon from the 13th day of January, 1833; and for this amount the court, at its October term, 1852, gave judgment.

The questions of law passed upon and reserved by a bill of exceptions in the court below, and which this court are now called on to review, arise upon the following agreed statement of facts, namely:—

That on or about the 12th March, 1818, the defendant was appointed by the President of the United States, collector for the district of Michilimackinac, and inspector of the revenue for the port thereof; which offices he continued to hold, by successive reappointments, and to receive the emoluments of, till the 15th day of January, 1833.

" That on or about the 1st April, 1819, the defendant was appointed, by the secretary of the treasury, inspector of the customs for the port of Michilimackinac; which office he continued to hold, under his original appointment, until January 15, 1833. The defendant's is the only case found on record of a collector holding at the same time the office of inspector of the customs. His allowance, in this capacity, was fixed by the secretary at forty dollars a month, and so continued until the second quarter of the year 1820, when it was increased by the secretary to three dollars per day, the maximum allowance permitted by law to a regular inspector of the customs. . The defendant continued to be paid, as inspector of the customs, at this rate, till the 1st July, 1822, when the act of congress of the 7th May, 1822, went into effect, entitled, ' An act further to establish the compensation of officers of the customs, and to alter certain collection districts, and for other purposes.' 3 Stat. at Large, 693. The 18th section of this act is as follows : ' No collector, surveyor, or naval officer shall ever receive more than $400 annually, exclusive of his compensation as collector, surveyor, or naval officer, and the fines and forfeitures allowed by law, for any services he may perform for the United States, in any other office or capacity.' "

" A copy of the foregoing law was duly transmitted by the treasury department to the defendant. In his accounts for the 3d and 4th quarters of the year 1822, the defendant charged compensation at the rate of $3 a day, as inspector of customs, which charge was disallowed at the treasury ; and in his accounts for the first three quarters of the year 1823, he charged compensation at the rate of $40 a month, as inspector of the customs, which latter charge was also disallowed at the treasury. The defendant rendered several other accounts, containing no charge as inspector of the customs, till the end of the year 1824. In a treasury settlement, made at that date, the defendant is

11 *

credited with $1,000, ' the amount of an allowance made by the secretary of the treasury, to the collector, for services as inspector, from 1st July, 1822, to 31st of December, 1824, at $400 per annum.' In his account rendered for the 1st quarter of the year 1825, the defendant charged himself with the balance found due from him on the next preceding settlement, in which he had been allowed but $400 per annum, as inspector of the customs ; and in his several successive settlements, from that time to 31st December, 1831, continued to charge only $400 per annum, as inspector of the customs."

" By the act of 2d March, 1831, ' to regulate the foreign and coasting trade on the northern, northwestern, and northeastern frontiers of the United States, and for other purposes,' .4 Stat. at Large, 487, the compensation of every collector, on the northern and northeastern and northwestern lakes and rivers, ' was fixed at an amount equal to the entire compensation received by such officer during the past year.' The defendant was credited, in 1831, and subsequently, with the compensation allowed to him in 1830, being $835$_{\frac{85}{100}}$, which included $400, allowed him as inspector of the customs. In 1832, he charged his compensation under this law ; but in the 4th quarter of that year he claimed the difference between $400 and 1,095 a year, from the 30th of June, 1822, to the 31st of December, 1832, being $7,297$_{\frac{50}{100}}$, for ten years and six months. This claim was, before the commencement of this suit, presented to the accounting officers of the treasury for their examination, and was disallowed. On the foregoing evidence the counsel for the defendant prayed the court to instruct the jury as follows : That the 18th section of the act of Congress, passed on the 7th of May, 1822, further to establish the compensation of the officers of the customs, &c., was not intended to operate, and ought not to be construed as operating, so as to limit the salary or compensation of any district officer, which may by distinct and independent appointment be vested in the person of one holding at the same time the separate office of collector, surveyor, or naval officer ; and that such limitation applies only to cases where the collector, surveyor, or naval officer is called to perform services in any other office or capacity, in virtue of, and as an incident to, his office ; not to any case where either of those officers was appointed to and executed the duties of another separate office, whilst collector, surveyor, or naval officer."

" If, therefore, the defendant was appointed to, and held and exercised, the office of inspector of customs, at the same time as that of collector of Michilimackinac, such office of inspector was not within the purview of the 18th section of the said act.

" Which instruction the court refused to give."

In the above statement of the claim of the plaintiff in error there is an apparent confusion in terms, which it may be proper here to mention, although its elucidation is not deemed essential to the decision of this case. Thus, it is said that the plaintiff in error was, in March, 1818, commissioned by the President, collector for the district of Michilimackinac, and inspector of the revenue for the port thereof, which offices he held by successive commissions until the 15th of January, 1833. In the next place it is stated, that the plaintiff in error was, on the 1st of April, 1819, appointed by the secretary of the treasury inspector of the customs for that port, which latter office he also continued to hold under this appointment until the 15th of January, 1833.

If by these two statements a distinction is designed between the office of inspector of the revenue and that of inspector of the customs, this court can perceive no warrant for any such distinction, but must regard the terms used as properly applicable to those inspectors or agents who, by the 21st section of the revenue law of March 2, 1799, are authorized, together with weighers, gaugers, and measurers, to be employed by the collectors, with the approbation of the officer at the head of the treasury department.

Again, regarding as we do the place of inspector, alleged to have been conferred by each of the appointments spoken of by the plaintiff, to be the same in character and objects as provided in the statutes, there would be a manifest irregularity in an attempt to refer its origin and commencement to different sources of creation, and thus to cover the same duties and obligations, and for the same period of time, under the guise of distinct and separate commissions.

The foundation of the claim preferred by the plaintiff in error, rests on the position that the offices of collector and surveyor are separate and different in their character, and in the powers and duties allotted to each ; and that under his separate commission, and in the discharge of his separate and appropriate duties, each officer is entitled to his separate and appropriate compensation.

Let us examine this proposition; nay, let it, as a general proposition, be conceded; the inquiry will still remain, how far the concession will sustain the claim of the plaintiff in the present instance.

It is undeniably true, that the act of Congress of March 2, 1799, Stat. at Large, 642, creates and enumerates separately the different offices of collector, naval officer, surveyor of the port, inspector, weigher, gauger, and measurer, and defines and prescribes the functions and duties of each respectively. And it is clear that in ports or districts in which all these offices

are called into actual existence, the functions and duties as-
signed to any one of them are not appropriated in terms, nor by
necessary implication, to any of the others; on the contrary,
those duties and functions, as distributed by the law, appear to
be different, and in some sense incompatible with their union
in the same individual, being in some instances in their nature
supervisory, and being designed to insure the fulfilment of a
portion of those duties by others.

But whilst this is the case, there cannot be denied to con-
gress the power, under circumstances satisfactory to themselves,
to blend in the same person or office functions or duties which,
under another aspect of facts, they have thought it proper to
divide and distribute. This is clearly a question of legislative
discretion, bearing upon views of public necessity or policy;
and accordingly we find, that, in view of such policy or neces-
sity, congress have, by the very same act of March 2, 1799,
materially modified, and to a certain extent contravened, the
previous organization prescribed for the collection of the revenue,
adapting such modification to the facts or necessities, as they
should really exist.

Notwithstanding, however, the power must be conceded to
congress to combine in the same officer duties and powers in
their nature seemingly incompatible, that power can be con-
ceded to the legislative authority alone and expressly declared,
and cannot be implied upon any sound principle of legal inter-
pretation or of public policy. Congress have, it is true, ordained,
in certain conjunctures, the union of the duties of collector, naval
officer, and surveyor of the port, but under no circumstances have
they transferred to either of the officers just enumerated the duties
of inspector of the customs. This last-named agent, it is said by
the statute, may, with the approbation of the officer at the head
of the treasury department, be employed by the collector. Under
this provision of the statute the question arises, whether the
collector *qua collector* can, under any circumstances, apart from
express legislative direction, become inspector of the customs,
or under the authority to employ such an agent can contract
with himself to employ himself as such an agent? We are very
sure that such a proceeding on the part of the collector is not
authorized by the language of the statute, and we think it not
warranted by any sound principle of policy, which on the con-
trary would inculcate a course tending rather to prevent than
to invite to fraud and collusion. The collector, therefore, is not
the inspector *virtute officii*, nor warranted in employing himself
as inspector, nor in assuming the functions, nor in claiming the
compensation, allowable to the latter officer.

In the case under consideration, the plaintiff in error has, by

the accounting officers of the government, been allowed for compensation, as inspector, the sum of $40 per month, until some time in the year 1820; and from the period last mentioned he was, for similar services, allowed the compensation of $3 per diem, until the 1st of July, 1822, from which last period the compensation of the collector was limited by the government, for all extra services, to the sum of $400 per annum, under the 18th section of the act of May 7, 1822, which declares: " That no collector, surveyor, or naval officer, shall ever receive more than $400 annually, exclusive of his compensation as collector, surveyor, or naval officer, and the fines and forfeitures allowed by law for any services he may perform for the United States in any other office or capacity."

The several allowances made by the government to the plaintiff in error, as inspector of the customs, and received by him in that character, and acquiesced in by both parties, may be regarded as no longer presenting subjects of controversy; but the facts of such allowances, and the acceptance of them, cannot be permitted to control the construction of a public law, nor to influence a claim now asserted under the provisions of that law; much less can they be regarded as affecting the power of. congress to regulate, prospectively, the duties and emoluments of agents created by its authority. When, therefore, the plaintiff in error advances a claim in the character of inspector, he must establish a legal and competent appointment to the office of inspector, and an appropriation to him of the duties and emoluments incident thereto. For these he has appealed to the revenue law of March 2, 1799; but neither in that, nor in any other revenue law, do we perceive, as appertaining to him as collector, the authority and functions of inspector, nor any right to con pensation for the services of the latter officer.

With regard to the allowance of $400 per annum, although accorded to him in settlement as inspector of the customs, it is pl in from the language of the statute of May 7, 1822, § 18, that this was intended to provide compensation to the collector, naval officer, and surveyor of the port, for extraordinary services incident to their respective offices, and to them only; and did not embrace the subordinate position of inspector, as to which a different mode and rate of compensation, that is, one graduated by the month or by the day, had been provided. To entitle himself to this latter compensation, the claimant must show himself regularly and exactly in the situation to which the law has allotted it. Upon a consideration of the case, we regard the question properly before us to be this: whether the collector, as such, and in virtue of his office, can claim compensation for services not required by the language of the statute by which

his duties are prescribed, nor inherently nor regularly appropriate to his office; services which the law has, upon obvious principles of policy, imposed on another and a different agent, subordinate to the collector, the performance of which services it is made the duty of the collector to supervise and enforce. We are of the opinion that the collector could have no such claim, and therefore decide that the judgment of the circuit court be affirmed.

## *Order.*

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof it is now here ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby affirmed.