### FREEDMAN v. MAGUIRE.

United States District Court
S. D. New York.
Feb. 17, 1953.

L. Ray Glass, New York City, for plaintiff.

Thaddeus G. Benton, New York City, for defendant.

EDELSTEIN, District Judge.

Defendant moves to dismiss and for summary judgment in an action by plaintiff for breach of contract seeking, among other relief, specific performance, damages and an accounting. Plaintiff alleges an oral agreement, entered into in or about October of 1948, with defendant, a producer of oil and gas in Oklahoma and Texas, whereby the latter undertook to deliver to the former leases of a certain type and description, namely, upon properties which would reimburse plaintiff her total costs within two years from the completion and commencement of operation of the wells. Under the contract as it is set forth the defendant further agreed that for those leases whose wells did not indicate by production records, upon completion and operation, that all of plaintiff's costs would be reimbursed within the two year period defendant would credit her account with those costs and thereupon invest the funds so credited in other of the defendant's leases upon the same terms and conditions. It is claimed that since the agreement plaintiff's investments have for the most part been placed in leases not meeting the contract specifications and that the defendant did not carry out his obligation to credit and reinvest. Defendant denies the existence of any oral agreement and contends that his transactions with the plaintiff are all evidenced by written purchase agreements which are inconsistent with the existence of any oral agreement. On December 3, 1951, the plaintiff instituted an action in the Supreme Court of New York to enforce her alleged agreement. Settlement negotiations were undertaken, and in December of 1951, in Florida, plaintiff avers that a second oral agreement was consummated, incorporating all terms and conditions of the prior agreement. Subsequently, the Supreme Court action was terminated, with plaintiff executing a general release, prepared by the defendant, on January 9, 1952. Simultaneously with the execution and delivery of the general release was the execution of an agreement (dated November 30, 1951) concerning two specific leases. Plaintiff maintains that the second agreement was breached just as was the earlier one.

■ Clearly, the causes of action set out in the complaint are sufficient to withstand the motion to dismiss, and defendant is really pressing his motion for a summary judgment. He argues that the complaint may be disposed of as a matter of law on the basis of the statute of frauds. New York Personal Property Law, McK.Consol. Laws, c. 41, § 31; New York Real Property Law, McK.Consol.Laws, c. 50, § 259. Whatever merit the argument may possess with respect to the alleged original agreement, which was presumably consummated in New York, the complaint avers a second agreement constituting in itself a new contract. And, having been consummated in Florida, it presents a difficult conflict of laws problem to which the defendant has not addressed himself, and which, consequently, will not be resolved on this motion. See New York Annotations, Restatement of Conflict of Laws, § 332.

■ It is further contended that as a matter of law, the general release disposes of the case. The release, prepared on a printed form, contains typewritten exceptions of obligations of defendant to plaintiff growing out of the actual operations of oil and gas leases, and of "any obligations created at or after the time of the execution of these presents." The date of the execution of the release was January 9, 1952, and it would appear to be the plain meaning of the language that an agreement entered into the previous December is covered without being excepted. However, the defendant in his own affidavit states that the real consideration for the release is the agreement of November 30, 1951, executed and delivered simultaneously with the release. That agreement was by its terms limited to two specific properties, reciting that the parties had entered into other agreements covering other properties; and it further made provision for the delivery of "a general release and discharge" of the defendant "in respect of any matters or things growing out of the negotiations for the execution of" the agreements on the two described properties. Reading the release in the light of defendant's affidavit and of the November 30 contract lends some credibility to the plaintiff's contention that the release was limited solely to matters involving the two specified leases. A liberal construction of the rule against disturbing the plain meaning of the language in a written contract would acknowledge the principle "that the sense to be enforced is the special sense, if any, which the parties have fixed upon; but let there be the most convincing proof that they have distinctly and mutually so agreed, and let this process of interpreting their actual words not be made a cloak for evading the other rule against substituting their extrinsic for their written terms." Wigmore, 3rd ed., vol. IX, § 2463, p. 207. Should such a position be adopted by the trial judge, a distinct issue of fact will be presented. I am not inclined, at this stage of the proceedings, to rule upon a point of admissibility of evidence which is more properly to be disposed of at the trial.

■ Whether the oral agreement is so lacking in mutuality and definiteness as to be unenforceable, similarly, raises issues of fact, though they may appear to be simple of resolution. Likewise, an issue of fact appears over whether certain letters sent by defendant and "signed" or "accepted" by plaintiff are complete accounts stated covering all transactions between the parties or merely periodic statements showing leases from which an income was being received and amounts paid on account for various expenses in connection with those leases.

■ Summary judgment, however, will be granted on the fourth cause of action, seeking damages for the defendant's failure to proceed according to his representations about the drilling operations under one of the leases. Whether or not the writing which embraces the subject of those drilling arrangements is a contract to purchase which (with other similar writings) is inconsistent with any original oral agreement concerning the investment, credit and reinvestment of plaintiff's funds, it is in any event uncontradicted by the plaintiff's affidavit that the writing constitutes an agreement on drilling which is clearly inconsistent with the fourth cause of action. Similarly, judgment will be granted on the

212

sixth cause of action, on the defendant's showing, without contradiction, that it is now moot.

The defendant has also moved for an order joining the plaintiff's husband as a plaintiff on the ground that he is the real party in interest or a jointly interested party. The basis for the motion is an allegation that the husband has actually supplied the money involved in the transactions between plaintiff and defendant and has acted as though his wife's account were his own. But there is no assertion that plaintiff is not a real party in interest, nor is it contended that the husband's joinder is indispensable to the final determination of the case. See Sheilds v. Barrow, 58 U.S. 129, 139, 15 L.Ed. 158. And even assuming the husband's interest in the controversy, it does not appear that he is a necessary party. See State of Washington v. United States, 9 Cir., 87 F.2d 421, 427–428. The facts of the source of the money for the plaintiff's investments and of her husband's activities in those transactions do not, in themselves, require that he be summoned to appear in the action.

Settle an order accordingly.