FLETCHER AIRCRAFT COMPANY, Plaintiff,

v.

Langhorne BOND, Administrator of the Federal Aviation Administration, and Robert Stanton, Western Regional Director of the Federal Aviation Administration, Defendants.

No. CV 77-2561-AAH.

United States District Court, C. D. California.

Dec. 22, 1977.

Albert & Oliker by Joseph C. Karol, Los Angeles, Cal., for plaintiff.

Andrea S. Ordin, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div. by Roger E. West, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

### ORDERING JUDGMENT FOR DEFENDANTS ON THE PLEADINGS, WITHOUT PREJUDICE

HAUK, District Judge.

Plaintiff, Fletcher Aircraft Company brings the above entitled action for an injunction and declaratory judgment against the defendant employees of the Federal Aviation Administration, who move for judgment on the pleadings.

Fletcher Aircraft Company is the assignee of Sargent-Fletcher Company of an F.A.A. Aircraft Type Certificate (hereafter referred to as "TC") authorizing the manufacture or importation of aircraft into the United States, under and by virtue of an assignment dated December 6, 1976. A TC is issued to an applicant by the F.A.A. and only one certificate is issued to a manufacturer for any particular design or type of aircraft. 14 C.F.R. Subpart B, Sections 21.11 ff.[1]

1. (v) Nature of the failure, malfunction, or defect.

[Amdt. 21–36, 35 F.R. 18187, Nov. 28, 1970, as amended by Amdt. 21–37, 35 F.R. 18450, Dec. 4, 1970]

Subpart B—Type Certificates

SOURCE: The provisions of this Subpart B contained in Docket No. 5085, 29 F.R. 14564, Oct. 24, 1964, unless otherwise noted.

§ 21.11 Applicability.

This subpart prescribes—

(a) Procedural requirements for the issue of type certificates for aircraft, aircraft engines, and propellers; and

(b) Rules governing the holders of those certificates.

§ 21.13 Eligibility.

Any interested person may apply for a type certificate.

[Amdt. 21–25, 34 F.R. 14068, Sept. 5, 1969]

§ 21.15 Application for type certificate.

(a) An application for a type certificate is made on a form and in a manner prescribed by the Administrator and is submitted to the appropriate FAA regional office.

(b) An application for an aircraft type certificate must be accompanied by a three-view drawing of that aircraft and available preliminary basic data.

(c) An application for an aircraft engine type certificate must be accompanied by a description of the engine design features, the engine operating characteristics, and the proposed engine operating limitations.

[Docket No. 5085, 29 FR 14564, Oct. 24, 1964, as amended by Amdt. No. 21–40, 39 FR 35459, Oct. 1, 1974]

§ 21.16 Special conditions.

(a) If the Administrator finds that the airworthiness regulations of this subchapter do not contain adequate or appropriate safety standards for an aircraft, aircraft engine, or propeller because of a novel or unusual design feature of the aircraft, aircraft engine or propeller, he prescribes special conditions and amendments thereto for the product. The special conditions are issued in accordance with paragraph (b) of this section and contain such safety standards for the aircraft, aircraft engine or propeller as the Administrator finds neces-

sary to establish a level of safety equivalent to that established in the regulations.

(b) Special conditions are issued to the applicant for the type certificate of the product involved as rules of particular applicability for his product after affording the applicant and other interested persons an opportunity to participate in this rule making. Any special conditions adopted under this section may be subsequently published in the Federal Register in summary form or, if the Administrator determines that the requirements of any special conditions may also apply generally to other aircraft, they may be issued in the form of proposed amendments to the airworthiness parts of the regulations, in accordance with the general rule-making procedures of Part 11 of this chapter.

[Amdt. 21-19, 32 F.R. 17851, Dec. 13, 1967]

### § 21.17 Designation of applicable regulations.

(a) Except as provided in § 25.2 and in Part 36 of this chapter, an applicant for a type certificate must show that the aircraft, aircraft engine, or propeller concerned meets—

(1) The applicable requirements of this subchapter that are effective on the date of application for that certificate unless—

(i) Otherwise specified by the Administrator; or

(ii) Compliance with later effective amendments is elected or required under this section; and

(2) Any special conditions prescribed by the Administrator.

(b) An application for type certification of a transport category aircraft is effective for 5 years and an application for any other type certificate is effective for 3 years, unless an applicant shows at the time of application that his product requires a longer period of time for design, development, and testing, and the Administrator approves a longer period.

(c) In a case where a type certificate has not been issued, or it is clear that a type certificate will not be issued, within the time limit established under paragraph (b) of this section, the applicant may—

(1) File a new application for a type certificate and comply with all the provisions of paragraph (a) of this section applicable to an original application; or

(2) File for an extension of the original application and comply with the applicable airworthiness requirements of this subchapter that were effective on a date, to be selected by the applicant, not earlier than the date which precedes the date of issue of the type certificate by the time limit established under paragraph (b) of this section for the original application.

(d) If an applicant elects to comply with an amendment to this subchapter that is effective after the filing of the application for a type certificate, he must also comply with any other amendment that the Administrator finds is directly related.

(Sec. 604, 72 Stat. 778, 49 U.S.C. 1424) [Doc. No. 5085, 29 F.R. 14564, Oct. 24, 1964, as amended by Amdt. 21-19, 32 F.R. 17851, Dec. 13, 1967; Amdt. 21-24, 34 F.R. 364, Jan. 10, 1969; Amdt. 21-42, 40 FR 1033, Jan. 6, 1975]

### § 21.19 Changes requiring a new type certificate.

Any person who proposes to change a product must make a new application for a type certificate if—

(a) The Administrator finds that the proposed change in design, configuration, power, power limitations (engines), speed limitations (engines), or weight is so extensive that a substantially complete investigation of compliance with the applicable regulations is required;

(b) In the case of a normal, utility, acrobatic, or transport category aircraft, the proposed change is—

(1) In the number of engines or rotors; or

(2) To engines or rotors using different principles of propulsion or to rotors using different principles of operation;

(c) In the case of an aircraft engine, the proposed change is in the principle of operation; or

(d) In the case of propellers, the proposed change is in the number of blades or principle of pitch change operation.

### § 21.21 Issue of type certificate: normal, utility, acrobatic, and transport category aircraft; aircraft engines; propellers.

An applicant is entitled to a type certificate for an aircraft in the normal, utility, acrobatic, or transport category, or for a manned free balloon or an aircraft engine or propeller, if—

(a) The product qualifies under § 21.27; or

(b) The applicant submits the type design, test reports, and computations necessary to show that the product to be certificated meets the applicable airworthiness and aircraft noise requirements of the Federal Aviation Regulations and any special conditions prescribed by the Administrator, and the Administrator finds—

(1) Upon examination of the type design, and after completing all tests and inspections, that the type design and the product meet the applicable aircraft noise requirements of the Federal Aviation Regulations, and further finds that they meet the applicable airworthiness requirements of the Federal Aviation Regulations or that any airworthiness provisions not complied with are compensated for by factors that provide an equivalent level of safety; and

(2) For an aircraft, that no feature or characteristic makes it unsafe for the category in which certification is requested.

[Doc. No. 5085, 29 F.R. 14564, Oct. 24, 1964, as amended by Amdt. 21-15, 32 F.R. 3735, Mar. 4, 1967; Amdt. 21-27, 34 F.R. 18363, Nov. 18, 1969]

\*　　\*　　\*　　\*　　\*　　\*

### § 21.29 Issue of type certificate: import products.

(a) A type certificate may be issued for a product that is manufactured in a foreign country with which the United States has an agreement for the acceptance of these products for export and import and that is to be imported into the United States if—

(1) The country in which the product was manufactured certifies that the product has been examined, tested, and found to meet—

(i) The applicable aircraft noise requirements of this subchapter as designated in § 21.17 or the applicable aircraft noise requirements of the country in which the product was manufactured and any other requirements the Administrator may prescribe to provide noise levels no greater than those provided by the applicable aircraft noise requirements of this subchapter as designated in § 21.17; and

(ii) The applicable airworthiness requirements of this subchapter as designated in § 21.17, or the applicable airworthiness requirements of the country in which the product was manufactured and any other requirements the Administrator may prescribe to provide a level of safety equivalent to that provided by the applicable airworthiness requirements of this subchapter as designated in § 21.17;

(2) The applicant has submitted the technical data, concerning aircraft noise and airworthiness, respecting the product required by the Administrator; and

(3) The manuals, placards, listings, and instrument markings required by the applicable airworthiness (and noise, where applicable) requirements are presented in the English language.

(b) A product type certificated under this section is considered to be type certificated under the noise standards of Part 36 of the Federal Aviation Regulations where compliance therewith is certified under paragraph (a)(1)(i) of this section, and under the airworthiness standards of that part of the Federal Aviation Regulations with which compliance is certified under paragraph (a)(1)(ii) of this section or to which an equivalent level of safety is certified under paragraph (a)(1)(ii) of this section.

[Amdt. 21–27, 34 F.R. 18363, Nov. 18, 1969]

### § 21.31 Type design.

The type design consists of—

(a) The drawings and specifications necessary to show the configuration of the product concerned and the design features covered in the requirements of that part of this subchapter applicable to the product;

(b) Information on dimensions, materials, and processes necessary to define the structural strength of the product; and

(c) Any other data necessary to allow, by comparison, the determination of the airworthiness and noise characteristics (where applicable) of later products of the same type.

[Docket No. 5085, 29 FR 14564, Oct. 24, 1964, as amended by Amdt. 21–27, 34 FR 18363, Nov. 18, 1969]

### § 21.33 Inspection and tests.

(a) Each applicant must allow the Administrator to make any inspection and any flight and ground test necessary to determine compliance with the applicable requirements of the Federal Aviation Regulations. However, unless otherwise authorized by the Administrator—

(1) No aircraft, aircraft engine, propeller, or part thereof may be presented to the Administrator for test unless compliance with paragraphs (b)(2) through (b)(4) of this section has been shown for that aircraft, aircraft engine, propeller, or part thereof; and

(2) No change may be made to an aircraft, aircraft engine, propeller, or part thereof between the time that compliance with paragraphs (b)(2) through (b)(4) of this section is shown for that aircraft, aircraft engine, propeller, or part thereof and the time that it is presented to the Administrator for test.

(b) Each applicant must make all inspections and tests necessary to determine—

(1) Compliance with the applicable airworthiness and aircraft noise requirements;

(2) That materials and products conform to the specifications in the type design;

(3) That parts of the products conform to the drawings in the type design; and

(4) That the manufacturing processes, construction and assembly conform to those specified in the type design.

[Doc. No. 5085, 29 F.R. 14564, Oct. 24, 1964, as amended by Amdt. 21–17, 32 F.R. 14926, Oct. 28, 1967; Amdt. 21–27, 34 F.R. 18363, Nov. 18, 1969; Amd. 21–44, 41 FR 55463, Dec. 20, 1976]

EFFECTIVE DATE NOTE: Paragraph (a) of § 21.33 becomes effective February 1, 1977. For the convenience of the user, the superseded text is set out below.

### § 21.33 Inspection and tests.

(a) Each applicant must allow the Administrator to make any inspection and, in the case of aircraft, any flight and ground tests necessary to determine compliance with the applicable requirements of the Federal Aviation Regulations. However, unless otherwise authorized by the Administrator—

(1) No aircraft or part thereof may be presented to the Administrator for tests unless compliance with paragraph (b)(2) through (4) of this section has been shown for that aircraft or part thereof; and

(2) No change may be made to an aircraft or part thereof between the time that compliance with paragraph (b)(2) through (4) of this section is shown for that aircraft or part thereof and the time that the aircraft or part thereof is presented to the Administrator for tests.

### § 21.41 Type certificate.

Each type certificate is considered to include the type design, the operating limitations, the certificate data sheet, the applicable regulations of this subchapter with which the Admin-

A TC may be wholly transferred or made available to third persons by licensing agreements. The TC, on its reverse side, contains a space for a transfer endorsement, to be signed by the holder and surrendered to the F.A.A. which then issues a new certificate to the transferee.

The central issue in this case, as raised by the complaint and motion for judgment on the pleadings, is who is the rightful holder of "TC 4A12." Plaintiff claims that the defendants wrongfully transferred "TC 4A12" from plaintiffs' assignor, Sargent-Fletcher, to Air Parts (N.Z.) Ltd., a New Zealand Corporation.

On November 13, 1953, Fletcher Aviation Corporation (not plaintiff, Fletcher Aircraft Company) applied for a TC on the aircraft known as the Fletcher Model FU–24. On July 22, 1955, the F.A.A. issued "TC 4A12" to Fletcher Aviation Corporation. On February 28, 1961, the F.A.A. amended "TC 4A12" to include an additional Fletcher Aircraft, Model FU–24A.

On February 19, 1964, Fletcher Aviation Corporation in a corporate acquisition and name change transferred "TC 4A12" to the Sargent-Fletcher Co., and the F.A.A. re-issued "TC 4A12" to Sargent-Fletcher on that date.

On October 12, 1972, Sargent-Fletcher Company transferred "TC 4A12" to Air Parts (N.Z.) Ltd. Mr. Clayton Blum, treasurer of Sargent-Fletcher Company, executed the transfer endorsement for Sargent-Fletcher Company. Plaintiff alleges that Mr. Blum was not authorized by Sargent-Fletcher to execute the transfer and that the F.A.A. knew or should have known that Mr. Blum was not authorized to endorse any transfer documents. On November 7, 1972, the F.A.A. re-issued "TC 4A12" to Air Parts (N.Z.) Ltd., the present holder of the TC.

Plaintiff, Fletcher Aircraft Company, the assignee of "TC 4A12" from Sargent-Fletcher Company on December 6, 1976, seeks to have the Court declare that the defendant F.A.A. employees, by transferring "TC 4A12" to Air Parts (N.Z.) Ltd., on the allegedly unauthorized endorsement of Clayton Blum, exceeded their lawful authority. Plaintiff also seeks an order directing the F.A.A. to cancel "TC 4A12" as issued to Air Parts (N.Z.) Ltd., and to issue to plaintiff a new and properly designated TC whether referred to as "TC 4A12" or not, for the Fletcher FU–24 and FU–24A aircraft.

Defendants move for judgment on the pleadings on the ground that plaintiff has failed to join an indispensable party within the meaning of F.R.Civ.P. Rule 19(b).

The question is whether Air Parts (N.Z.) Ltd., is an indispensable party to this action for an injunction and declaratory

istrator records compliance, and any other conditions or limitations prescribed for the product in this subchapter.

**§ 21.43 Location of manufacturing facilities.**

Except as provided in § 21.29, the Administrator does not issue a type certificate if the manufacturing facilities for the product are located outside of the United States, unless the Administrator finds that the location of the manufacturer's facilities places no undue burden on the FAA in administering applicable airworthiness requirements.

**§ 21.45 Privileges.**

The holder or licensee of a type certificate for a product may—

(a) In the case of aircraft, upon compliance with §§ 21.173 through 21.189, obtain airworthiness certificates;

(b) In the case of aircraft engines or propellers, obtain approval for installation on certificated aircraft; and

(c) In the case of any product, upon compliance with §§ 21.133 through 21.163, obtain a production certificate for the type certificated product.

(d) Obtain approval of replacement parts for that product.

**§ 21.47 Transferability.**

A type certificate may be transferred to or made available to third persons by licensing agreements. Each grantor shall, within 30 days after the transfer of a certificate or execution or termination of a licensing agreement, notify in writing the appropriate FAA Regional Office. The notification must state the name and address of the transferee or licensee, date of the transaction, and in the case of a licensing agreement, the extent of authority granted the licensee.

**§ 21.49 Availability.**

The holder of a type certificate shall make the certificate available for examination upon the request of the Administrator or the National Transportation Safety Board.

[Doc. No. 5085, 29 F.R. 14564, Oct. 24, 1964, as amended by Doc. No. 8084, 32 F.R. 5769, Apr. 11, 1967]

judgment. This Court concludes that Air Parts is such an indispensable party and that the action must be dismissed, but without prejudice to refiling when and if Air Parts is joined as a party defendant.

 It is a firmly established procedural maxim that a judgment which substantially affects the rights of a party who is not joined violates due process. *Hanson v. Denckla,* 357 U.S. 235, 254–5, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Supreme Court first enunciated this principle of indispensable parties in *Shields v. Barrow,* 58 U.S. (17 How.) 129, 15 L.Ed. 158 (1854). Persons are indispensable parties who not only have an interest in the controversy, but such an interest that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.

This principle is now embodied in Rule 19 of the Federal Rules of Civil Procedure which provides, in pertinent part, as follows:

### Rule 19.
### JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or in a proper case, an involuntary plaintiff.

If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(c) *Pleading Reasons for Nonjoinder.* A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(1)–(2) hereof who are not joined, and the reasons why they are not joined.

It is thus clear that, following Rule 19(a) the Court must first determine whether Air Parts is an indispensable party. Here, where the plaintiff seeks to divest Air Parts' right to hold "TC 4A12," Air Parts is an indispensable party and clearly should be joined if at all possible, because in its absence complete relief cannot be accorded those already parties, and its claimed interest which, in the absence of Air Parts as a party, cannot adequately be protected. Putting it in the language of Rule 19(a), the absence of Air Parts as a party will impair and impede its ability to protect that interest.

Having determined that Air Parts (N.Z.) Ltd., should be joined, the Court must then decide whether, under the standards out-

lined in Rule 19(a), it is feasible for the Court to join Air Parts. Examining the pleadings, it is apparent that since the Court does not have *in personam* jurisdiction over Air Parts, and since the complaint does not give any reasons why Air Parts is not joined as required by Rule 19(c), we now turn to Rule 19(b).

Under this Rule, it is our duty to determine whether in equity and good conscience the action should proceed with the parties before it or be dismissed because the absent party is indispensable. Rule 19(b) enumerates four factors to be considered by the Court in determining whether the Court can, in equity and good conscience, proceed without the absent party. The list is by no means exhaustive, nor does the rule state how much weight is to be given to each of the factors. 7 Wright & Miller, Federal Practice and Procedure, § 1607, p. 63 (1972). Thus Rule 19(b) vests considerable discretion with the trial Court. *Id.*

The four factors listed are: *first,* to what extent a judgment rendered in a person's absence might be prejudicial to him, or those already parties; *second,* the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; *third,* whether a judgment rendered in the person's absence will be adequate; and *fourth,* whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Examination of the four factors outlined by Rule 19(b) compels this Court to determine that the litigation cannot proceed without Air Parts.

With regard to the first factor, a judgment rendered in the absence of Air Parts (N.Z.) Ltd., would surely prejudice its interest. A cancellation of its status as putative holder of "TC 4A12" would mean that it would no longer be authorized by the F.A.A. to manufacture the designated aircraft in New Zealand for export therefrom and for import into the United States.

Taking up the second factor, whether the Court can shape its decree such that the prejudice will be avoided or lessened, the Court cannot find, nor does counsel suggest, any way that the Court can grant the relief requested by the plaintiff without prejudicing the absent Air Parts. Should the Court grant plaintiff's prayer for relief, Air Parts would lose its status as holder of a valid TC, to wit, "TC 4A12." The conclusion is inescapable that if plaintiff were to be granted its requested relief, the absent party, (Air Parts) would suffer prejudice, no matter how the Court shapes its decree.

The third factor to be considered, whether a judgment entered in the absence of Air Parts would be adequate, again points to the conclusion that Air Parts is indispensable. A judgment not affecting Air Parts could not give plaintiffs the requested relief. A judgment granting plaintiff's requested relief would be prejudicial to the absent party. Any judgment on the merits entered without Air Parts being represented would be inadequate.

Turning to the fourth factor, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder, the Court notes that this last factor also indicates dismissal for nonjoinder. The plaintiff, being the claimed rightful assignee of "TC 4A12," may bring an action against the assignor Sargent-Fletcher Company for breach of contract or for rescission. Also there are no reasons alleged why plaintiff would be unable to join and effect service on Air Parts. See Rule 19(c).

Having determined that Air Parts is an indispensable party without whom this Court cannot proceed, and that the Court can dismiss plaintiff's action, does not end the matter. The standards set out in Rule 19 should be applied in a way that will effectuate the policy of avoiding circuity of lawsuits. 7 Wright & Miller, Federal Practice and Procedure, § 1604, p. 43. Thus the plaintiff will be given an opportunity to join Air Parts if at all possible. Judgment for defendants is, therefore, granted without prejudice to the plaintiff's refiling of the action, provided that Air Parts is served and joined as a party, all within 45 days.

Let Judgment be entered accordingly.